IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

Robert O. Powell,  :

    Plaintiff,  :

  v.  :  Case No. 2:13-cv-795

    :  JUDGE GEORGE C. SMITH
Commissioner of Social Security,  Magistrate Judge Kemp
    :

    Defendant.

REPORT AND RECOMMENDATION

I. Introduction

Plaintiff, Robert O. Powell, filed this action seeking review of a decision of the Commissioner of Social Security denying his applications for disability insurance benefits and supplemental security income. Those applications were filed on June 16, 2010, and alleged that Plaintiff became disabled on December 24, 2009.

After initial administrative denials of his applications, Plaintiff was given a hearing before an Administrative Law Judge on August 8, 2011, followed by a second hearing on December 29, 2011. In a decision dated February 10, 2012, the ALJ denied benefits. That became the Commissioner's final decision on June 7, 2013, when the Appeals Council denied review.

After Plaintiff filed this case, the Commissioner filed the first certified administrative record on October 29, 2013. Plaintiff filed his statement of specific errors on November 20, 2013. The Commissioner filed a response on February 18, 2014. No reply brief has been filed, and the case is now ready to decide.

II. Plaintiff's Testimony at the Administrative Hearing

Plaintiff, who was 25 years old at the time of the

administrative hearings and had a ninth grade education (but later obtained a GED and attended college for nine months), testified as follows. His testimony appears at pages 55-78 of the administrative record.

At the first hearing, the initial subject Plaintiff was asked about was a psychiatric hospitalization. He described what appeared to be a psychotic episode and said that, as a result of it, he was committed to mental hospital for two months. He had social adjustment issues after his hospitalization. Plaintiff admitted to past use of marijuana and crack cocaine and said he had been in treatment. He had racing thoughts and difficulty concentrating. He stopped mental health treatment due to lack of transportation and money.

Plaintiff described anxiety when dealing with others. He had no friends other than his mother and grandmother. He often spent days in his room watching television.

At one time, Plaintiff worked as a driver at an auto auction. He quit because he did not feel appreciated. He had also worked at Taco Bell and as a grocery store stock clerk, and had done data entry at a collection agency on an as-needed basis. He thought he would not be hired if he tried to go back to work, perhaps due to having scars from self-mutilation.

Upon questioning from the Administrative Law Judge, Plaintiff said that he had not used drugs in eight months, except that "he smoked a little weed here and there." At the conclusion of the first hearing, the ALJ stated that a consultative psychological examination would be ordered, and he continued the hearing until after that had occurred. Only a vocational expert testified at the second hearing.

### III. The Medical Records

The medical records in this case are found beginning on page 315 of the administrative record. The pertinent records can be

summarized as follows.

The discharge summary from Twin Valley Behavioral Hospital, dated February 23, 2010, shows that Plaintiff was admitted on January 4, 2010, as an emergency admission from Netcare. The cause of the admission was listed as "recent abuse of drugs and acting out in the middle of the street with no shirt and acting erratic, possibly on drugs." Plaintiff's admission diagnoses were polysubstance dependence and substance-induced mood disorder. He described a long history of substance abuse as well as a history of legal problems. While hospitalized, he was started on medications to treat depression and anxiety. He attended group sessions and his condition improved to the point where he could be discharged. He was directed to follow up with treatment and was given medications. His GAF on discharge was 58 and his mood was good but slightly anxious. (Tr. 318-20).

The record contains a drug and alcohol assessment from Southeast, Inc. dated July 27, 2010. At that time, Plaintiff reported being depressed and also said he had used marijuana and cocaine within the past eight days. Additionally, he had not followed through with Twin Valley's recommendation for mental health treatment. He was accepted for group counseling. (Tr. 335-50). That counseling started on August 9, 2010 and he participated actively for the next several months. When seen for medication management on November 24, 2010, he was described as alert and oriented, with a euthymic and stable mood. His thinking was linear and future-oriented. He had a diagnosis of Psychosis NOS and a mood disorder NOS as well as substance dependence and OCD traits. He was given various medications. (Tr. 376). A prior note indicated that he self-mutilated and that he was "covered with all sizes of circular scars and same shaped wounds." (Tr. 383). At that time, his GAF was rated at 50. (Tr. 384). He did have some relapses into substance abuse

during this time period.

The consultative examination to which Plaintiff was referred was conducted by Dr. Tanley, a psychologist. Plaintiff described his chief complaint as deep depression and anxiety with panic attacks. He reported appetite and sleep disturbances as well as mood problems. His days consisted of sleeping late, watching television, and doing some outdoor chores. His intellectual functioning was in the high average range. No psychological testing was done. Dr. Tanley diagnosed an anxiety disorder and a depressive disorder and rated Plaintiff's GAF at 50. He thought Plaintiff would function well intellectually in a work setting and had no problems with maintaining attention and concentration, as well as maintaining persistence and pace to perform both simple and multi-step tasks. However, Dr. Tanley thought Plaintiff would have problems dealing with supervision and, given his anxiety level, "the exposure to work, particularly if other people are involved would likely not go well for him." (Tr. 412-16). Dr. Tanley translated this comment to marked impairments in the areas of interacting with the public, dealing with supervisors, and responding appropriately to changes in a routine work setting, although Plaintiff was only moderately impaired in his ability to interact appropriately with coworkers. (Tr. 409-11).

The final record comes from Netcare, Inc., describing an emergency contact on February 28, 2012. Plaintiff was brought in by the Sheriff's office due to manic/psychotic thinking. His grandmother reported he had been awake for four days straight. He also admitted to recent marijuana use and alcohol consumption and could not state how often he had been using these substances. His GAF at that time was rated at 20 and he was again discharged to Twin Valley for further treatment. This last record post-dates the ALJ's decision and was submitted directly to the

Appeals Council. (Tr. 418-28). As a result, the Court cannot consider it. Cotton v. Sullivan, 2 F.3d 692 (6th Cir. 1993).

In addition to these medical records, the assessments made by two state agency reviewers are part of the record. On September 27, 2010, Dr. Rivera concluded that Plaintiff had an affective disorder and a substance abuse disorder but neither was severe. (Tr. 82-89). On December 17, 2010, Dr. Richardson stated that Plaintiff had a severe psychotic disorder which had resulted in one or two episodes of decompensation but that it only mildly impacted his other work-related abilities. He explained that the treatment records showed improvement in Plaintiff's condition with medication and that Plaintiff had no issues socializing and was dealing with stress through his treatment program. (Tr. 92-99).

IV. The Vocational Testimony

Mr. Hartung was the vocational expert in this case. His testimony appears at pages 37-47 of the administrative record.

Mr. Hartung testified that Plaintiff had worked as a fast food worker, an unskilled, light job. He thought the driver job was the same, although the DOT indicated it was semi-skilled. If the data entry job counted as past relevant work, it was also unskilled and light.

Mr. Hartung was then asked some questions about a hypothetical person who could work at any exertional level. However, due to mental impairments, the person could understand and remember only simple instructions, could sustain attention only to complete simple, repetitive tasks where production quotas were not critical, could tolerate coworkers and supervisors with limited interpersonal demands, and could work only in an object-focused, non-public work setting. According to Mr. Hartung, someone with those restrictions could perform Plaintiff's past relevant work as a driver. That person could also perform

unskilled jobs such as housekeeping cleaner, freight and stock handler, vehicle cleaner, or groundskeeping worker. He also identified the number of such jobs in the regional and national economies.

Mr. Hartung was then asked by Plaintiff's attorney if someone who could have no contact with coworkers could do those jobs. He replied that the only job he could think of which was done in total isolation was fire spotter. He also testified that someone who needed to take several unscheduled breaks of up to five to ten minutes during the work day would not remain employed, nor would someone who could not tolerate even routine changes in the work place. Finally, he said that the jobs he previously identified could be performed by someone who could tolerate only superficial contact or interaction with supervisors and coworkers and no interaction with the public.

V. <u>The Administrative Law Judge's Decision</u>

The Administrative Law Judge's decision appears at pages 11-29 of the administrative record. The important findings in that decision are as follows.

The Administrative Law Judge found, first, that Plaintiff met the insured requirements for disability benefits through December 31, 2012. Next, Plaintiff had not engaged in substantial gainful activity from December 24, 2009 forward. As far as Plaintiff's impairments are concerned, the ALJ found that Plaintiff had severe impairments best described as an anxiety disorder and a depressive disorder. The ALJ also found that these impairments did not, at any time, meet or equal the requirements of any section of the Listing of Impairments (20 C.F.R. Part 404, Subpart P, Appendix 1).

Moving to the next step of the sequential evaluation process, the ALJ found that Plaintiff had the residual functional capacity to perform work at all exertional levels with these

-6-

restrictions: he could understand and remember simple instructions, maintain attention to complete simple repetitive tasks where production quotas are not critical, tolerate coworkers and supervisors with limited interpersonal demands in an object-focused, nonpublic work setting, and adapt to routine changes in a simple work setting.  The ALJ found that, with these restrictions, Plaintiff could not perform his past relevant work, but he could perform the jobs identified by Mr. Hartung and that such jobs existed in significant numbers in the regional and national economies.  Consequently, the ALJ concluded that Plaintiff was not entitled to benefits.

VI.  Plaintiff's Statement of Specific Errors

In his statement of specific errors, Plaintiff raises these issues: (1) the ALJ did not properly evaluate Plaintiff's credibility; (2) substantial evidence did not support the limitations contained in the hypothetical question posed to Mr. Hartung; (3) the ALJ failed properly to consider Plaintiff's psychosis and resulting limitations; and (4) the ALJ improperly discounted Dr. Tanley's consultative report findings.  The Court analyzes these claims under the following standard.

Standard of Review.  Under the provisions of 42 U.S.C. Section 405(g), "[t]he findings of the Secretary [now the Commissioner] as to any fact, if supported by substantial evidence, shall be conclusive. . . ."  Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion'" Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Company v. NLRB, 305 U.S. 197, 229 (1938)).  It is "'more than a mere scintilla.'" Id.  LeMaster v. Weinberger, 533 F.2d 337, 339 (6th Cir. 1976).  The Commissioner's findings of fact must be based upon the record as a whole.  Harris v. Heckler, 756 F.2d 431, 435 (6th Cir. 1985); Houston v. Secretary, 736 F.2d 365, 366 (6th

-7-

Cir. 1984); Fraley v. Secretary, 733 F.2d 437, 439-440 (6th Cir. 1984).  In determining whether the Commissioner's decision is supported by substantial evidence, the Court must "'take into account whatever in the record fairly detracts from its weight.'" Beavers v. Secretary of Health, Education and Welfare, 577 F.2d 383, 387 (6th Cir. 1978) (quoting Universal Camera Corp. v. NLRB, 340 U.S. 474, 488 (1951)); Wages v. Secretary of Health and Human Services, 755 F.2d 495, 497 (6th Cir. 1985).  Even if this Court would reach contrary conclusions of fact, the Commissioner's decision must be affirmed so long as that determination is supported by substantial evidence.  Kinsella v. Schweiker, 708 F.2d 1058, 1059 (6th Cir. 1983).

### A. Credibility

Plaintiff's argument about the ALJ's credibility finding hinges on 20 C.F.R. §404.1529 and Social Security Ruling (SSR) 96-7p.  The former explains how an ALJ will evaluate a claimant's symptoms, requiring the ALJ to consider, among other things, the claimant's daily activities, the duration, frequency, and intensity of his reported symptoms, precipitating and aggravating factors, medication (including side effects), treatment or therapy, and any other pertinent factors.  The latter (SSR 96-7p) similarly states that an evaluation of credibility is to be made "based on a consideration of the entire case record" including medical records, the claimant's own testimony, and "any other relevant evidence in the case record."  It also provides that "[t]he determination or decision must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight."  Plaintiff argues that the specific reasons given by the ALJ for determining him not to be fully credible are

-8-

not supported by, or are contradicted by, the record, and that the ALJ ignored large portions of the record in making that finding.

Ordinarily, the ALJ is given considerable discretion in determining the credibility of any witness who testifies at an administrative hearing; the ALJ, unlike this Court, has had the chance to see the witness testify and to make judgments about the witness's demeanor and believability. Although the ALJ is given wide latitude to make determinations about a claimant's credibility, the ALJ is still required to provide an explanation of the reasons why a claimant is not considered to be entirely credible, and the Court may overturn the ALJ's credibility determination if the reasons given do not have substantial support in the record. See, e.g. Felisky v. Bowen, 35 F.3d 1027 (6th Cir. 1994).

Plaintiff quotes a single paragraph from the ALJ's decision, found at Tr. 24, to suggest that the ALJ based his credibility finding on these factors: the Plaintiff's exaggeration of his symptoms; the lack of substantial support for his testimony in the medical records; and the fact that Plaintiff described many of his symptoms in response to leading questions posed to him at the hearing. Plaintiff argues that, to the contrary, the questions asked at the hearing were not leading (and even if they were, such questioning is not improper) and that the medical records contain multiple references to serious symptoms. That is not the entire picture, however.

The Commissioner's memorandum does a thorough job of describing and discussing the evidence upon which the ALJ relied in discounting Plaintiff's testimony about disabling symptoms. In addition to the factors cited by Plaintiff, the ALJ relied on (1) Plaintiff's failure to maintain medical compliance or seek psychiatric help after being discharged from Twin Valley (Tr. 23); (2) his failure to follow treatment directives and the fact

-9-

that he did not attend all of his group therapy sessions (id.); (3) the conservative nature of his treatment regimen (Tr. 24); (4) the fact that medications treated Plaintiff's symptoms effectively when he took them (id.); (5) Plaintiff's "full and rather normal lifestyle" (id.); and (6) the fact that Plaintiff provided inconsistent information to the Social Security Administration concerning his symptoms, limitations, and activities of daily living (id.).  Elsewhere in the administrative decision (Tr. 14), the ALJ discussed the various reports about Plaintiff's daily activities, which included caring for pets, playing video games, going to the movies, and going grocery shopping.  He also noted the state agency reviewer's view that Plaintiff had only a mild limitations in most areas, and Dr. Tanley's report that Plaintiff functioned intellectually at a high average level and seemingly had no issues with comprehending and following instructions or maintaining concentration or pace. (Tr. 17-19).  All of these factors exist in and are supported by the record.

It is fair to say that, in this case, the ALJ offered multiple reasons for finding Plaintiff not fully credible, and they reflect a full consideration of the evidence of record, as mandated by §404.1529.  The ALJ also articulated his reasoning clearly, in compliance with SSR 96-7p.  That leaves only the question of whether substantial evidence supports his finding if a few of the reasons he gave, such as the extensive use of leading questions at the hearing (there were certainly some, but there were many non-leading questions as well), may not be the most accurate reading of the record.

The Court of Appeals analyzes this question under a harmless error standard.  See Ulman v. Comm'r of Social Security, 693 F.3d 709 (6th Cir. 2012).  The Ulman court found Carmickle v. Comm'r of Social Security, 533 F.3d 1155, 1162 (9th Cir. 2008) instructive on this point, noting that where an ALJ "found a

that he did not attend all of his group therapy sessions (id.); (3) the conservative nature of his treatment regimen (Tr. 24); (4) the fact that medications treated Plaintiff's symptoms effectively when he took them (id.); (5) Plaintiff's "full and rather normal lifestyle" (id.); and (6) the fact that Plaintiff provided inconsistent information to the Social Security Administration concerning his symptoms, limitations, and activities of daily living (id.).  Elsewhere in the administrative decision (Tr. 14), the ALJ discussed the various reports about Plaintiff's daily activities, which included caring for pets, playing video games, going to the movies, and going grocery shopping.  He also noted the state agency reviewer's view that Plaintiff had only a mild limitations in most areas, and Dr. Tanley's report that Plaintiff functioned intellectually at a high average level and seemingly had no issues with comprehending and following instructions or maintaining concentration or pace. (Tr. 17-19).  All of these factors exist in and are supported by the record.

It is fair to say that, in this case, the ALJ offered multiple reasons for finding Plaintiff not fully credible, and they reflect a full consideration of the evidence of record, as mandated by §404.1529.  The ALJ also articulated his reasoning clearly, in compliance with SSR 96-7p.  That leaves only the question of whether substantial evidence supports his finding if a few of the reasons he gave, such as the extensive use of leading questions at the hearing (there were certainly some, but there were many non-leading questions as well), may not be the most accurate reading of the record.

The Court of Appeals analyzes this question under a harmless error standard.  See Ulman v. Comm'r of Social Security, 693 F.3d 709 (6th Cir. 2012).  The Ulman court found Carmickle v. Comm'r of Social Security, 533 F.3d 1155, 1162 (9th Cir. 2008) instructive on this point, noting that where an ALJ "found a

claimant less than credible based in part upon invalid reasons," if harmless error review shows that "'the error does not negate the validity of the ALJ's ultimate credibility conclusion,'" the ALJ's credibility finding must be affirmed. Ulman, 693 F.3d at 714, quoting Carmickle, supra. The Ulman court found that, with one exception, the ALJ's decision in that case carefully parsed the medical records and gave them fair weight, and that under the "highly deferential standard of review" which applied, the ALJ's decision had to be affirmed. Id. This Court has, consistent with Ulman, taken the same approach. See, e.g., Riley v. Commissioner of Social Sec., 2013 WL 3467212, *8 n.6 (S.D. Ohio July 10, 2013)("Even if the ALJ's reliance on the challenged evidence was discounted, substantial evidence (that Plaintiff has not challenged) remains supporting the ALJ's credibility determinations. The Undersigned, therefore, declines to disturb the ALJ's credibility determination"), adopted and affirmed 2013 WL 4776736 (S.D. Ohio Sept. 6, 2013). That is the case here. Most of the reasons cited by the ALJ are valid and supported by the record, and it is extremely unlikely that the few less-well-supported reasons were determinative of his credibility finding. For this reason, Plaintiff's first claim of error lacks merit.

B. The Hypothetical Question

The main fault that Plaintiff points out in the hypothetical question posed to Mr. Hartung, the vocational expert, is that it allegedly "ignored Mr. Powell's nonexertional limitations as captured in the medical evidence and his testimony." Statement of Errors, Doc. 13, at 12. Plaintiff argues that because the limitations described in the question are more restrictive than the ones which the state agency reviewers found, it is not clear where the ALJ derived the limitations. He also asserts that the ALJ should have incorporated his testimony and other evidence about his self-mutilation into the hypothetical question.

It is not entirely clear what legal claims this alleged error raises. Certainly, the ALJ incorporated nonexertional limitations into the residual functional capacity finding and into the hypothetical question he posed to Mr. Hartung; in fact, the question contained exclusively nonexertional factors. If Plaintiff is arguing that it was defective because he testified to additional limitations, the Court has already found that the ALJ did not err when assessing the credibility of that testimony. And that includes testimony about Plaintiff's self-mutilation; neither he nor anyone else related specific work-related limitations to that symptom, apart from Plaintiff's speculation that a prospective employer might be put off by his appearance. The ALJ was not required to incorporate that testimony into the hypothetical question about work-related restrictions.

Plaintiff also suggests that because the question did not mirror exactly the findings of the state agency reviewers, the ALJ must have done something incorrectly. There are two problems with this argument. First, the ALJ does not have to have a specific medical opinion about each restriction he incorporates into his residual functional capacity finding. Rather, as long as those findings are supported by the medical evidence as a whole, this Court may not overturn them. See, e.g., Meyer v. Comm'r of Social Security, 2011 WL 1124698, *8 (S.D. Ohio Feb. 11, 2011), adopted and affirmed 2011 WL 1124673 (S.D. Ohio March 24, 2011). Second, any error in this regard was clearly harmless, because the ALJ found Plaintiff to be more restricted than the state agency reviewers did, and developed a residual functional capacity which favored Plaintiff. The Court sees no error in either the ALJ's residual functional capacity finding or the hypothetical question which incorporated it, at least with regard to this assignment of error.

### C. Mr. Powell's Psychosis

Plaintiff's third claim of error is that the ALJ disregarded

substantial evidence that Plaintiff's psychosis was both a severe
impairment and resulted in limitations on his ability to perform
work-related functions.  He argues that the record is replete
with references to symptoms of this illness, primarily auditory
hallucinations or delusional thinking, and that someone suffering
from these types of symptoms could not do any type of work.

One major problem with this argument is that, despite the
fact that psychotic episodes or symptoms are described in the
record, evidence as to the nature of the symptoms (apart from the
ones which led to his hospitalization) comes mostly from
Plaintiff's self-reporting, and the ALJ found Plaintiff not to be
totally credible.  Additionally, none of the treating, examining
or reviewing mental health providers concluded that these
symptoms were inconsistent with the ability to do basic work-
related functions.  In fact, Dr. Tanley thought that Plaintiff
could do a much higher level of work activity than the ALJ
ultimately found, even though many of the psychotic symptoms
Plaintiff relies on were noted in Dr. Tanley's report.

Further, if an error was made when the ALJ concluded that
Plaintiff's psychosis was not a severe impairment, because the
ALJ found Plaintiff's other psychological conditions to be
severe, and because he evaluated Plaintiff's residual functional
capacity based on the entire record, any issue about whether
Plaintiff's psychosis was severe is essentially moot.  That is,
"where an ALJ errs in finding a particular impairment
'non-severe' in step two of the analysis, the error is harmless
if the ALJ finds at least one severe impairment and continues to
address each impairment in determining the claimant's RFC."
Underwood v. Colvin, 2014 WL 347031, *9 (S.D. Ohio Jan. 30,
2014), adopted and affirmed 2014 WL 656642 (S.D. Ohio Feb. 19,
2014).  That is what happened here, and, as the Commissioner
correctly points out, Plaintiff has not suggested with any
specificity what additional limitations resulted from his

psychosis beyond those arising from his depression and anxiety, apart from his general contention - unsupported by the record - that anyone with a psychotic illness cannot perform any of the mental demands of work activity.

### D.  Dr. Tanley's Report

Last, Plaintiff argues that the ALJ erred by not giving controlling weight to Dr. Tanley's report.  Although Dr. Tanley's findings as to many areas of work-related functions were actually less restrictive than those contained in the ALJ's assessment of Plaintiff's abilities, Dr. Tanley believed that Plaintiff had several marked impairments, and one of them - an inability to deal with changes in a routine work setting - could be viewed as work-preclusive.  (Dr. Tanley also found marked impairments in the areas of dealing with the public and supervisors, but Mr. Hartung testified that the jobs he identified could be performed even by someone who could tolerate only superficial interaction with supervisors, and could not deal with the public at all). The question is whether the ALJ had a substantial basis for concluding differently than Dr. Tanley did as to this particular work-related function.

Plaintiff contends that the ALJ wrongly concluded that Dr. Tanley based this part of his assessment on what Plaintiff said during the examination.  But it is hard to see what else could have been the basis for his conclusion; Dr. Tanley cited Plaintiff's "high level of anxiety" as a basis for it, and in his report, the section titled "Anxiety" contains nothing but Plaintiff's self-report of fears in family, work, and social settings.  (Tr. 414).  Plaintiff also argues, in support of this claimed error, that the ALJ should not have found him to be less than fully credible and should not have discounted the statements he made to Dr. Tanley, but this argument has already been resolved against Plaintiff.

Finally, an ALJ need not assign controlling weight to a

-14-

consultative examiner's opinion, or even articulate his reasons for rejecting it in the same way as he must for a treating source under 20 C.F.R. §404.1527(c). As long as there is a substantial basis for discounting it to some degree - and there is here, although the ALJ also made many findings which were more favorable to Plaintiff than were Dr. Tanley's - the Court is not free to second-guess the ALJ's decision. See, e.g., Nolan v. Comm'r of Social Security, 2013 WL 1787386, *6 (S.D. Ohio Apr. 25, 2013), adopted and affirmed 2013 WL 4831029 (S.D. Ohio Sept. 10, 2013)("although the record must contain substantial evidence supporting the rejection or discounting of a consultative examiner's opinion, social security regulations 'require[ ] ALJs to give reasons for only treating sources.' Smith v. Comm'r of Social Security, 482 F.3d 873, 876 (6th Cir.2007)"). Thus, there is no merit in this last claim of error.

## VII. Recommended Decision

Based on the above discussion, it is recommended that the Plaintiff's statement of errors be overruled and that judgment be entered in favor of the Defendant Commissioner of Social Security.

## VIII. Procedure on Objections

If any party objects to this Report and Recommendation, that party may, within fourteen (14) days of the date of this Report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s). A judge of this Court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. Upon proper objections, a judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the magistrate judge with instructions. 28 U.S.C. §636(b)(1).

The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to have the district judge review the Report and Recommendation <u>de novo</u>, and also operates as a waiver of the right to appeal the decision of the District Court adopting the Report and Recommendation.  <u>See Thomas v. Arn</u>, 474 U.S. 140 (1985); <u>United States v. Walters</u>, 638 F.2d 947 (6th Cir. 1981).

/s/ Terence P. Kemp
United States Magistrate Judge